IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No 13-cv-03327-RBJ

T. RICHARD BUTERA, an individual,

      Plaintiff,

v.

RICHARD P. CRANE, JR., an individual,

      Defendant.

---

## ORDER

---

      Plaintiff Richard Butera filed breach of contract, fraud, and negligent misrepresentation claims against defendant Richard Crane in connection with an investment plaintiff made in a development trust for the City of Vernon, California.  Defendant seeks dismissal of all of plaintiff's claims, arguing that all three are time-barred and that the latter two fail under Federal Rule of Civil Procedure 9(b).  For the reasons laid out below, the Court now grants in part and denies in part defendant's motion to dismiss.

## I.  FACTS

      The present dispute originates from an alleged fraudulent scheme surrounding a development trust for the City of Vernon, California, an industrial city located outside of Los Angeles.  Amended Complaint, ECF No. 14, at ¶¶ 8–23.  The city adopted a resolution in June of 2004 declaring its intention to create a "Development Trust as the economic investment vehicle

1

to act for the City." *Id.* at ¶ 12.  Mr. Crane, a California resident, thereafter executed an

"Agreement and Declaration of Development Trust of the City of Vernon," purporting to

establish the trust ("DTCV") pursuant to the city resolution.  *Id.* at ¶¶ 2, 14, 15.  However, the

city never signed this Agreement and Declaration, nor did the City Council of Vernon take any

action to approve it, as was required by the resolution.  *Id.* at ¶¶ 13, 16–19.

Some months later, on November 29, 2004, defendant allegedly caused the DTCV to

enter into an Investment Transaction Agreement with CIC Financiere SA ("CIC"), pursuant to

which the self-appointed trustees of the DTCV, including defendant, granted authority and

control over funds invested in the DTCV to CIC. *Id.* at ¶¶ 22, 23.

Mr. Butera, a Colorado resident, became involved when—at some unspecified date—he

met Mr. Crane through a mutual acquaintance, Frank Ross.  *Id.* at ¶¶ 1, 25, 26.  The plaintiff and

defendant then had a meeting in New York—their only in-person meeting regarding the

DTCV—and discussed Mr. Butera's possible investment in the trust.  *Id.* at ¶¶ 27, 28.  The rest

of the negotiations about his investment, including a trip that Mr. Ross made on behalf of

defendant, took place while plaintiff was in Colorado.  *Id.* at ¶¶ 29, 30.

During the course of these negotiations, "Defendant and his representatives" allegedly

made various false representations.  *Id.* at ¶ 32.  Specifically, the Amended Complaint alleges the

following misrepresentations:

> (a) DTCV was a validly existing entity and investment vehicle for Vernon.
> (b) DTCV had been properly organized and approved under the authority of
> Vernon.
> (c) Defendant was a trustee of the DTCV with authority granted by Vernon to
> solicit investors for city projects.
> (d) Investments in DTCV would be used for the benefit of Vernon.

(e) The trustees, including Defendant, intended to make investments in the
European market in order to help finance the construction of a power plant in
Vernon and other city projects.
(f) Plaintiff's investment would benefit the DTCV.
(g) The DTCV was subject to oversight by Vernon.
(h) Plaintiff's investment would be secured by a $25 million "capital fund."
(i) The $25 million "capital fund" would grow to $500 million by September
2006.
(j) Plaintiff's investment would be placed in Triple A rated securities with high
yields.
(k) CIC would pay the DTCV $50 million by September 2006 for the purpose of
repaying investor capital.
(l) CIC would pay the DTCV $100 million no later than November 2007.
(m) Plaintiff would be repaid the entire amount of his principal investment in
addition to high returns on that investment.

*Id.* Defendant also provided plaintiff with Resolution 8448, the Agreement and Declaration, and

the Investment Transaction Agreement between the DTCV and CIC, all of which plaintiff alleges

"contain[ed] the false representations set forth [above] regarding the DTCV and Plaintiff's

proposed investment therein." *Id.* at ¶ 33.

Relying on these false representations, Mr. Butera entered into the Capital Investment

Agreement ("CIA") on January 19, 2006 for the purpose of investing in the DTCV. *Id.* at ¶¶ 34,

38. Plaintiff invested $1 million in the trust, but none of it was invested for the benefit of

Vernon. *Id.* at ¶¶ 39, 42. Under the CIA, plaintiff was supposed to receive periodic payments

and be re-paid in the amount of $1.5 million on or before October 1, 2007. *Id.* at ¶¶ 43, 47.

However, he has not received any payment pursuant to the agreement, despite "repeated

representations" that he would recoup his investment made by "Defendant and other parties

involved in the DTCV" after October 1, 2007. *Id.* at ¶¶ 45, 48.

In fact, the plaintiff and defendant entered into a separate Guaranty of Payment

agreement ("the Guaranty") on September 1, 2007. *Id.* at ¶ 50. In this agreement, a group of

3

guarantors, including the defendant, guaranteed the return of plaintiff's investment.  *Id.* at ¶ 51.
Under the terms of the Guaranty, defendant agreed to pay plaintiff $250,000 upon execution of
the Guaranty and an additional $750,000 by October 7, 2008.  *Id.* at ¶ 52.  While defendant did
make the initial $250,000 payment, he never made any further payments pursuant to the
Guaranty.  *Id.* at ¶¶ 62, 65.

 The Amended Complaint spends some time discussing the Guaranty's connection to
Colorado.  First, the Guaranty provides that it "shall be governed, construed and interpreted as to
validity, enforcement and in all other respects, in accordance with the laws of the State of
Colorado" and  goes on to state that "in any action or proceeding brought by [plaintiff] the
District Court in Pitkin County, Colorado, or in a case involving diversity of citizenship, the
United States District court for the District of Colorado, shall have jurisdiction of any such action
or proceeding . . ."  *Id.* at ¶¶ 54, 55.  Furthermore, plaintiff's Colorado attorneys drafted the
Guaranty in Colorado, plaintiff executed it in Colorado, and defendant's signature page was
delivered to plaintiff in Colorado.  *Id.* at ¶¶ 56–58.  Plaintiff never traveled to California to
negotiate the Guaranty, nor did any negotiations surrounding it take place in California.  *Id.* at ¶¶
59, 60.  Payments under the Guaranty were to be made to plaintiff in Colorado.  *Id.* at ¶ 66.
Indeed, the initial $250,000 payment was wired to plaintiff's Colorado bank account.  *Id.* at ¶¶
63.

 Over five years after entering into the Guaranty agreement, plaintiff discovered
defendant's false representations concerning the DTCV and the Capital Investment Agreement
"for the first time" in the spring of 2013, after he hired counsel in an attempt to collect on the

Guaranty. *Id.* at ¶ 74. Through his attorneys, plaintiff undertook an independent investigation into defendant's representations, which ultimately led to his filing this suit. *See id.* at ¶¶ 75–88.

Plaintiff now brings breach of contract, fraud, and negligent misrepresentation claims against defendant, who seeks to dismiss all three claims.

## II. DISCUSSION

### A.  Standard of Review

In reviewing a motion to dismiss, the Court must accept the well-pleaded allegations of the complaint as true and construe them in the plaintiff's favor. However, the facts alleged must be enough to state a claim for relief that is plausible, not merely speculative. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). A plausible claim is one that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Allegations that are purely conclusory are not entitled to an assumption of truth. *Id.* at 681. However, so long as the plaintiff offers sufficient factual allegations such that the right to relief is raised above the speculative level, he has met the threshold pleading standard. *See e.g.*, *Twombly*, 550 U.S. at 556; *Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2008).

### B.  Sufficiency of Pleadings

Plaintiff sets forth three claims for relief: (1) breach of contract based on the Guaranty, (2) fraud based on deceit surrounding false representations made to plaintiff during negotiations of the CIA, and (3) negligent misrepresentation during those same negotiations. Defendant seeks dismissal of all three. For the reasons discussed below, the Court declines to dismiss plaintiff's

breach of contract claim, but grants defendant's motion as to the fraud and negligent

misrepresentation claims.

### 1. **Breach of Contract Claim**

Defendant argues that this Court should apply California law in analyzing the statute of

limitations applicable to plaintiff's breach of contract claim.  California's relevant statute of

limitations is four years, CCP § 337(1), while Colorado's is six years, C.R.S. § 13-80-

103.5(1)(a).  Because the alleged breach occurred in October of 2008, ECF No. 14 at ¶¶ 52, 65,

and plaintiff filed this claim in April of 2014, ECF No. 14, whether California or Colorado law

applies is the critical determination in assessing whether this claim is time-barred.  Defendant

puts forth two arguments for why California law should be applied here, one based on

Colorado's borrowing statute and the second based on Colorado's conflict of laws principles.

The Court will address each in turn.

### a. **The Borrowing Statute**

Colorado's borrowing statute states that "[i]f a cause of action arises in another state . . .

and, by the laws thereof, an action thereon cannot be maintained in that state . . . by reason of

lapse of time, the cause of action shall not be maintained in this state."  Colo. Rev. Stat. §13-80-

110.  Thus the applicability of the borrowing statute turns on where a cause of action "arises."

The Colorado Supreme Court's analysis in *Jenkins v. Panama Canal Ry. Co.* makes clear that

where a cause of action arises is distinct from which state's substantive law applies, but it does

not lay out a test for where a claim arises.  *See* 208 P.3d 238, 243 (Colo. 2009) ("the borrowing

statute only assigns limitations periods based on where a case arose, and does not consider the

applicable substantive law").

Indeed, there does not appear to be a case citing Colorado's borrowing statute that discusses where a breach of contract claim arises.[1]  The defendant makes no attempt to cite one, *see* ECF No. 18 at 7, and the plaintiff notes only a Colorado case from 1934 and a Florida case, both of which address where a claim "arises" for venue purposes, not for purposes of a borrowing statute, *see* ECF No. 25 at 11–12.[2]  "Absent controlling precedent, [a] federal court [sitting in diversity] must attempt to predict how the state's highest court would resolve the issue." *Royal Maccabees Life Ins. Co. v. Choren*, 393 F.3d 1175, 1180 (10th Cir. 2005).  Given the lack of Colorado law on this issue, the Court will look to the reasoning of courts that have analyzed other states' borrowing statutes for guidance.  There appear to be two primary approaches that courts have taken on this issue; a case representative of each is discussed below.

First, in *BHP Petroleum (Americas), Inc. v. Texaco Exploration & Prod., Inc.*, the Supreme Court of Wyoming examined a list of factors in determining where a breach of contract claim arose under Wyoming's borrowing statute.  1 P.3d 1253, 1257–58 (Wyo. 2000).  The statute, which states that "[i]f by the laws of the state or country where the cause of action arose the action is barred, it is also barred in this state," *id.* at 1256 (quoting Wyo. Stat. Ann. § 1-3-117), contains language similar to that in Colorado's borrowing statute.  In determining where

---

[1] The Court notes that the 10th Circuit in *Vandeventer v. Four Corners Elec. Co.* used Colorado choice of law principles to determine where a tort claim arose for purposes of the Colorado borrowing statute.  *See* 663 F.2d 1016, 1018 (10th Cir. 1981).  However, the Colorado case it cited in support of this approach—*First Nat. Bank in Fort Collins v. Rostek*—discussed only a traditional choice of law issue and did not mention the borrowing statute.  *See* 182 Colo. 437, 448 (1973).  Thus the Court does not find the *Vandeventer* opinion controlling in this case.  *See also Great Rivers Co-op of Se. Iowa v. Farmland Indus., Inc.*, 934 F. Supp. 302, 306 (S.D. Iowa 1996) ("[T]here is no clear guidance in the cases interpreting the Colorado borrowing statute or its predecessor, section 13–80–118, as to where a claim arises.") (discussing *Vandeventer*, 663 F.2d 1016).

[2] Courts have noted that an analysis of where a claim arises for venue purposes is not instructive in determining where it arises under a borrowing statute.  *See, e.g.*, *Combs v. Int'l Ins. Co.*, 354 F.3d 568, 595 (6th Cir. 2004) ("The planned place of performance is a possibly appropriate venue, but that says little about where a cause of action accrues pursuant to the borrowing statute.").  Neither, it seems, does a forum selection clause dictate where a claim arises under a borrowing statute.  *See, e.g.*, *Global Fin. Corp. v. Triarc Corp.*, 93 N.Y.2d 525, 530, 715 N.E.2d 482, 485 (1999).

the plaintiff's contract claim arose, the court considered where the contract was formed

(specifically, where it was negotiated and where the requisite instruments were delivered), the

place of payment or performance, the location of the subject matter of the contract, and the place

where the breach occurred. *Id.* at 1257–58. It also noted that Restatement (Second) Conflict of

Laws § 188 provides examples of factors to be considered in this context, but did not go so far as

to explicitly adopt the Restatement's "most significant relationship" test.[3] *Id.* at 1257.

A New York opinion analyzing the applicability of that state's borrowing state takes a

different approach. *See Global Fin. Corp. v. Triarc Corp.*, 93 N.Y.2d 525 (1999). In that case,

the plaintiff urged the court to adopt a "center of gravity" test to determine where a contract

action accrued under New York's borrowing statute. *Id.* at 528. The court, however, found that

"[i]n using the word 'accrued' in [the borrowing statue] there is no indication that the Legislature

intended the term to mean anything other than the generally accepted construction . . . [which is]

the time when, and the place where, the plaintiff first had the right to bring the cause of action."

*Id.* (internal citations and quotations omitted). Looking to tort cases for guidance, the court

noted that "[w]hen an alleged injury is purely economic, the place of injury usually is where the

plaintiff resides and sustains the economic impact of the loss." *Id.* at 529. Thus, since the

plaintiff—a corporation alleging that the defendant had failed to pay for services rendered—had

suffered the alleged injury either where it was incorporated or at its principal place of business,

the cause of action accrued at one of those locations.[4] *Id.*

---

[3] The Sixth Circuit undertook a thorough analysis of this issue in *Combs v. Int'l Ins. Co.* and concluded that most jurisdictions that have examined the issue have not adopted the Restatement test in this context. *See* 354 F.3d 568, 580–96 (6th Cir. 2004).

[4] The Court also notes a variation on this approach taken by the Sixth Circuit in interpreting Kentucky's borrowing statute in *Willits v. Peabody Coal Co.*, 188 F.3d 510 (6th Cir. 1999) (unpublished opinion). In that case, the contract did not specify where ongoing payments were to be received, so the court instead looked to the location where the

At this stage, the Court need not guess at the precise standard the Colorado Supreme Court would adopt on this issue because under either of the approaches discussed above, the plaintiff has alleged sufficient facts to plausibly find that his claim arose in Colorado.

Under the holistic approach taken by the Wyoming court, the relevant factors include where the contract was formed, the place of payment or performance, the location of the subject matter of the contract, and the place where the breach occurred. Construing plaintiff's allegations in the light most favorable to him, it is plausible that the Guaranty agreement was formed in Colorado when the plaintiff executed the contract there and received defendant's signature page there. *See* ECF No. 14 at ¶¶ 57, 58. Additionally, the contract was to be performed in Colorado—the place plaintiff was to receive payment—and was partially performed there. *Id.* at ¶¶ 63, 66. Thus it is plausible that the breach also occurred in Colorado when the plaintiff did not receive the second payment there. The subject matter of the Guaranty was the CIA contract, which arguably was "located" in California, although that contract also had ties to Colorado. *See id.* at ¶ 51. In any event, under a holistic analysis of where the Guaranty contract and defendant's alleged breach were located, plaintiff has pled sufficient facts to plausibly find that claim arose in Colorado.

Similarly under the New York approach, plaintiff suffered the alleged economic injury when he did not receive defendant's payment in Colorado, where he was located and where the

---

payments were calculated and prepared: "Peabody calculated the royalties at its office in Missouri, and sent the payments from that office. To the extent that the calculations and the resulting payments were a breach of Peabody's obligation, that breach occurred in the office in Missouri." *Id.* at *13. Furthermore, "The fact that the contract was executed in Kansas by parties who were Kansas residents at the time is not dispositive of where the causes of action *accrued.*" *Id.* at *14 (emphasis in original). *See also Abraham v. Gen. Cas. Co. of Wisconsin*, 217 Wis. 2d 294, 311 (1998) ("[A] claim sounding in contract is a 'foreign cause of action' [under the Wisconsin borrowing statute] when the final significant event giving rise to a suable claim occurs outside the state of Wisconsin").

contract directed payment to be made. *Id.* at ¶¶ 63, 66. Thus, under this test, the breach of

contract claim arose in Colorado, not California.

Although the Court declines at this stage to predict the precise standard the Colorado

Supreme Court would adopt on this issue, it is clear that under either of the two primary

approaches developed in other jurisdictions, the plaintiff has alleged sufficient facts to plausibly

find that his claim arose in Colorado. Therefore, the Court will not dismiss plaintiff's claim on

this basis.

### b. Conflict of Law Principles

"In making choice of law determinations, a federal court sitting in diversity must apply

the choice of law provisions of the forum state in which it is sitting." *Shearson Lehman Bros. v.*

*M & L Investments*, 10 F.3d 1510, 1514 (10th Cir. 1993). Thus the Court applies Colorado's

choice of law principles. In contract actions, Colorado courts look to the Restatement (Second)

Conflict of Laws (1971). *See Farris v. ITT Cannon, a Div. of ITT Corp.*, 834 F. Supp. 1260,

1266 (D. Colo. 1993). As relevant here, Restatement (Second) of Conflict of Laws § 187

provides:

> The law of the state chosen by the parties to govern their contractual rights and
> duties will be applied . . . unless . . . application of the law of the chosen state
> would be contrary to a fundamental policy of a state which has a materially
> greater interest than the chosen state in the determination of the particular issue
> and which, under the rule of § 188, would be the state of the applicable law in the
> absence of an effective choice of law by the parties.

Although the Guaranty expressly provides that Colorado law will govern any dispute between

the parties, ECF No. 14 at ¶ 54, defendant argues that California law should be applied here. To

reach this conclusion, the Court would need to find that (1) California has a materially greater

interest in the present issue, (2) California law would apply in the absence of the choice by the

parties, and (3) the application of Colorado law here would be contrary to a fundamental policy

of California.  The Court is not convinced at this stage that California law would apply in the

absence of the parties' choice, and therefore declines to analyze the other two prongs of the test.[5]

 In determining what law would otherwise apply in a contract dispute, courts in Colorado

apply Restatement (Second) of Conflict of Laws § 188, which lists a number of relevant factors:

"(a) the place of contracting, (b) the place of negotiation of the contract, (c) the place of

performance, (d) the location of the subject matter of the contract, and (e) the domicil, residence,

nationality, place of incorporation and place of business of the parties."

 Mirroring the conclusion reached above in the holistic analysis under the borrowing

statute, the Court here finds that plaintiff has alleged sufficient facts to plausibly defeat the

conclusion that California law would apply in the absence of the parties' choice.  Based on the

allegations in the Amended Complaint, it is plausible that Colorado was the place of contracting

and negotiation; the plaintiff allegedly executed the contract there and received defendant's

signature page there.  ECF No. 14 at ¶¶ 57, 58.  Furthermore, the Guaranty was drafted in

Colorado by plaintiff's attorneys.  *Id.* at ¶ 56.  The place of performance was also plausibly

Colorado, where the plaintiff was supposed to and did receive payment under the contract.[6]  *Id.*

at ¶¶ 63, 66.  Again, the subject matter of the Guaranty was the CIA contract, which arguably

was "located" in California.  *See id.* at ¶ 51.  Finally, plaintiff resides in Colorado, while

defendant is in California.  *Id.* at ¶¶ 1, 2.  In sum, plaintiff has alleged enough for the Court to

---

[5] As plaintiff points out, the fact-intensive analysis required in deciding a choice-of-law dispute is generally more appropriate at a later stage in the litigation.  *See Harper v. LG Electronics USA, Inc.*, 595 F. Supp. 2d 486, 491 (D.N.J. 2009).
[6] It is worth emphasizing here that this analysis focuses only on the Guaranty itself, not the underlying CIA.

find it plausible that Colorado law would apply even in the absence of parties' choice.  Thus, the

Court declines to dismiss the breach of contract claim under choice of law principles.[7]

For the reasons outlined above, the Court denies defendant's motion to dismiss as to the

breach of contract claim.[8]

### 2.  Fraud and Negligent Misrepresentation Claims

Defendant also moves for the dismissal of plaintiff's fraud and negligent

misrepresentation claims, arguing that (1) they are time-barred and (2) they are not pled with

sufficient particularity.  The Court will address each argument in turn.

### a.  The Statutes of Limitations

Regardless of whether the Court ultimately determines that Colorado law or California

law applies here, fraud claims are subject to a three-year statute of limitations.  C.R.S. § 13-80-

101(1)(c); CCP § 338(d).  Under Colorado law, a two-year statute of limitations applies to

negligent misrepresentation claims.  *Trierweiler v. Croxton & Trench Holding Corp.*, 90 F.3d

1523, 1537 (10th Cir. 1996) ("Colorado law subjects negligent misrepresentation claims to a

two-year limitations period.") (citing C.R.S. 13-80-102(1)(a)).  There appears to be some

disagreement in California cases about whether negligent misrepresentation claims are subject to

---

[7] Defendant requests that the Court take judicial notice of an earlier tentative ruling from a California state court, where plaintiff initially sued and then voluntarily dismissed his claim. ECF No. 18 at 2 n1.  While the Court may take judicial notice of another court's order, *see Viernow v. Euripides Development Corp.*, 157 F.3d 785, 794 n.17 (10th Cir. 1998), the California order is not helpful here.  Defendant argues that the reasoning in that tentative ruling should persuade this Court to dismiss the contract claim, *id.* at 9–10.  But that order discusses a test used by California courts to determine if they will enforce another jurisdiction's law—an analysis distinct from the Restatement test discussed above.  ECF No. 18, Ex. 2.  Indeed, the tentative opinion does not go through an analysis of which state's law would apply in the absence of the parties' choice.  *See id.* While the Court appreciates defendant's concern about forum shopping, I must nonetheless apply Colorado's conflict of law principles here to determine if dismissal is appropriate.  At this stage, it is not.
[8] Plaintiff also argues that defendant waived any defense based on Mr. Butera's delay in filing this claim. ECF No. 25 at 10.  Because the motion to dismiss is denied as to the claim, the Court need not address this argument at this time.

a two- or three-year statute of limitations, but the resolution of this question does not impact the analysis in this case. *See, e.g.*, *Malmen v. World Sav. Inc.*, No. CV 10-9009 AHM JEMX, 2011 WL 1464587, at *3 (C.D. Cal. Apr. 18, 2011) ("A negligent misrepresentation claim has either a two- or three-year statute of limitations. . . . [the court here] applies a three-year statute of limitations . . ."); *Cutler v. Rancher Energy Corp.*, No. SACV 13-00906-DOC, 2014 WL 1153054, at *5 (C.D. Cal. Mar. 11, 2014) ("[A] claim of negligent misrepresentation implicates the two-year statute of limitations for negligence, rather than the three-year statute of limitations for fraud."). The parties do not dispute that plaintiff did not bring these claims within three years of the alleged fraud. *See* ECF No. 18 at 10; ECF No. 25 at 14–15. However, plaintiff argues that since he did not discover the facts giving rise to the claims until the spring of 2013 (less than two years before filing these claims), both claims are timely.

The three-year statute of limitations in C.R.S. § 13-80-101(1)(c) and the two-year statute of limitations in C.R.S. 13-80-102(1)(a) are both measured from the date on which the cause of action "accrues." C.R.S. § 13-80-101(1); C.R.S. § 13-80-102(1).[9] "A cause of action for fraud [or] misrepresentation . . . shall be considered to accrue on the date such fraud [or] misrepresentation . . . is discovered or should have been discovered by the exercise of reasonable diligence." C.R.S. §13-80-108(3). As a general principle, "the relevant issue is when a plaintiff discovers facts essential to the cause of action, not the legal theory upon which the cause of action would be based." *Olson v. State Farm Mut. Auto. Ins. Co.*, 174 P.3d 849, 855 (Colo. App.

---

[9] The Court examines this issue under Colorado law, but notes that the analysis under California law is essentially the same. *See* CCP § 338(d) ("The cause of action in that case is not deemed to have accrued until the discovery, by the aggrieved party, of the facts constituting the fraud or mistake."); *Casaretto v. Coldwell Banker Realty*, No. 10-CV-00509-LHK, 2011 WL 1466120, at *3 (N.D. Cal. Apr. 15, 2011) ("The statute of limitations for a claim of negligent misrepresentation [runs from] the date the claim accrues. . . . [A]ccrual can be postponed until plaintiff discovers or has reason to discover the existence of a claim, meaning that the plaintiff at least has reason to suspect a factual basis for its elements.") (internal citations and quotations omitted).

2007) (internal quotations omitted).  Furthermore, the tolling statute "require[s] that the plaintiff use due diligence to find out the relevant circumstances or events.  This requirement creates an objective standard, and does not reward denial or self-induced ignorance." *Id.* at 854.

Here, the plaintiff plainly alleges that he first discovered the alleged fraud and misrepresentations in the spring of 2013, ECF No. 14 at ¶ 74, and the Court does not find any other allegation that undermines that assertion.  The defendant argues that the fact that plaintiff sought the Guaranty to ensure his full investment would be refunded is a "strong indication" that he was aware of the facts giving rise to these claims.  ECF No. 18 at 12.  However, it is not clear to the Court why that is so; all that can be gleaned from plaintiff's seeking a guaranty is that he thought his investment was in trouble, not that he suspected he had been defrauded.  Given plaintiff's clear allegation, the Court cannot dismiss these claims on the theory that plaintiff knew of the fraud and misrepresentations before the spring of 2013.

What plaintiff should have known and when he should have known it are more complicated questions.  Indeed, they are questions requiring a fact-intensive analysis that is not appropriate at this stage:  "A defense that a claim is barred by a statute of limitation is an affirmative defense that generally is not resolved on a motion to dismiss.  Only where the allegations of the complaint clearly show that the case was not brought within the applicable period may a court grant a motion to dismiss on that basis."  *First Am. Mortgage, Inc. v. First Home Builders of Florida*, No. 10-CV-0824-RBJ-MEH, 2011 WL 4963924, at *13 (D. Colo. Oct. 14, 2011).  On the face of the Amended Complaint, the Court cannot conclude that plaintiff should have undertaken a more rigorous investigation at the time when the parties entered into the Guaranty, as defendant argues.  *See* ECF No. 18 at 13.  All that is clear from the allegations

is that when plaintiff sought the Guaranty, he wanted additional assurance that his investment would be repaid.  It is at least plausible that plaintiff had no inkling of the alleged fraud and misrepresentations and no reason to look into things further.  What additional investigation he should have undertaken and when he should have done so are questions to be answered on a fuller record.  Thus, the Court also declines to dismiss these claims on the theory that plaintiff should have discovered the relevant facts over two or three years before he brought these claims.

The Court concludes that the plaintiff has alleged sufficient facts to defeat the dismissal of his fraud and negligent misrepresentation claims under the applicable statutes of limitations of both Colorado and California.

### b.  Lack of Particularity

Defendant also seeks dismissal of plaintiff's fraud and negligent misrepresentation claims under Federal Rule of Civil Procedure 9(b), which states that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."[10]  The Tenth Circuit has interpreted this to mean that a complaint alleging fraud must "set forth the [1] time, [2] place and [3] contents of the false representation, [4] the identity of the party making the false statements and [5] the consequences thereof."  *Koch v. Koch Indus., Inc.*, 203 F.3d 1202, 1236 (10th Cir. 2000) (internal citations and quotations omitted).  Broadly, "Rule 9(b)'s purpose is to afford defendant fair notice of plaintiff's claims and the factual ground upon which they are based."  *Id.* (internal citations and quotations omitted).  Here, plaintiff has pled facts surrounding

---

[10] The dismissal of a complaint for failing to satisfy the requirements of Rule 9(b) is treated as a dismissal for failure to state a claim upon which relief can be granted under Rule 12(b)(6).  *Seattle-First Nat. Bank v. Carlstedt*, 800 F.2d 1008, 1011 (10th Cir. 1986).

the content and consequences of the alleged fraud with sufficient particularity, but has failed to

meet 9(b)'s requirements with respect to time, place, and party identification.

### i. Content and Consequences

The plaintiff has clearly and specifically alleged the contents of the false representations

at issue and the consequences he suffered because of them. *See* ECF No. 14 at ¶¶ 32, 33, 34, 39,

45–47. The Amended Complaint lists thirteen specific false representations made during the

negotiating process and in documents given to plaintiff in connection with his investment. *Id.* at

¶ 32, 33. It further states that the alleged fraud caused him to invest $1 million in the DTCV

with the expectation that he would be repaid $1.5 million; however, he never received any

payment under the CIA. *Id.* at ¶¶ 34, 39, 45–47. Thus the Amended Complaint does not fail for

lack of particularity about the contents and consequences of the alleged fraud.

### ii. Time and Place

However, the allegations surrounding the time and place of the alleged fraud fall short of

the Rule 9(b) standard. Plaintiff states that the false representations were made "during the

course of the negotiations," *id.* at ¶ 32, which, judging from plaintiff's other allegations, appear

to have taken place at some point after November of 2004 and before January 19, 2006, *see id.* at

¶ 22, 34. No more specific time frame is discussed. Plaintiff does mention an in-person meeting

with defendant in New York (without giving a date), *id.* at ¶ 28, and the Amended Complaint

implies that at least one additional meeting took place in Colorado, *see id.* at ¶¶ 29, 30. Yet

plaintiff never says specifically when or where any alleged misrepresentation was made. Courts

have found that allegations about time and place at this level of generality fall short of the Rule

9(b) standard. *See, e.g.*, *Koch*, 203 F.3d at 1237.

Furthermore, plaintiff has also failed to allege when and where he received the documents that also serve as a basis for his fraud claim. *See id.* at ¶ 33. The Amended Complaint states only that "Defendant also provided plaintiff with documents, including, but not limited to, Resolution 8448, the Agreement and Declaration, and the Investment Transaction Agreement containing the false representations set forth in the preceding paragraph regarding the DTCV and Plaintiff's proposed investment therein." *Id.* Although the plaintiff alleges in other parts of the Amended Complaint when these documents were first created, the alleged fraud occurred when defendant provided them to plaintiff. Thus the plaintiff must allege when and where he received them, which he fails to do. *See id.*

### iii. <u>Identity of the Parties</u>

Finally, the Amended Complaint does not identify the parties who made the false statements beyond a reference to "Defendant and his representatives." *See id.* at ¶ 32. This is insufficient under rule 9(b). *See Koch*, 203 F.3d at 1236. As an initial matter, plaintiff never explicitly states who the representatives referred to are. A defendant does not have fair notice of a plaintiff's claim if he does not even know which people allegedly made false statements on his behalf. *See, e.g.*, *Segal Co. (E. States) v. Amazon.Com*, 280 F. Supp. 2d 1229, 1231 (W.D. Wash. 2003) ("[T]he complaint's reference to certain 'representatives' of defendant is too vague to sufficiently identify the alleged perpetrators"); *Emeribe v. Wells Fargo Bank, N.A.*, No. CIV.A. H-12-2545, 2013 WL 140617, at *2 (S.D. Tex. Jan. 10, 2013) ("Plaintiff not only does not identify the name(s) of the representative(s) but also does not identify any other specifics by which the representative(s) who made the statements can be identified. . . . [the claims] are therefore dismissed for failure to comply with the pleading requirements of 9(b).").

Furthermore, the Amended Complaint does not allege any agency relationship between defendant and his "representatives."   A conclusory statement referring to "representatives" is also insufficient for this reason.  *See Yates v. Portofino Real Estate Properties Co., LLC*, No. CIV. 08-CV-00324-PAB, 2009 WL 2588833, at *2 (D. Colo. Aug. 17, 2009) ("If plaintiffs intend to rely on an agency relationship to hold PREPCO accountable for Mr. Tapp's or PEMCO's representations and conduct, they must make such allegations explicit [to meet the particularity requirement of Rule 9(b)]."). Thus plaintiff's allegations fail to set forth the identity of the parties making the false statements as required under Rule 9(b).[11]

### iv.  Applicability of Rule 9(b) to Negligent Misrepresentation Claims

Defendant asserts that Rule 9(b) applies not only to plaintiff's fraud claim, but also to his negligent misrepresentation claim.  ECF No. 18 at 15 n.10.  While the text of the rule is not entirely clear on this point, the Tenth Circuit has recently approved of a district court's dismissal of a negligent misrepresentation claim under Rule 9(b): "[T]he district court recognized that Mr. Heaton fatally failed to plead his fraud and negligent misrepresentation claims with particularity as required by Fed.R.Civ.P. 9(b). . . . We perceive no error in the district court's analysis." *Heaton v. Am. Brokers Conduit*, 496 F. App'x 873, 876 (10th Cir. 2012).  The Court is further persuaded by the reasoning in *Gunningham v. Standard Fire Ins. Co.*, in which the court concluded that "the particularity requirement is applicable to the negligent misrepresentation claim.  In this context, negligence is a type of mistake and Rule 9(b) concerns allegations of fraud or mistake."  No. CIVA 07CV02538REMKLM, 2008 WL 4377451, at *2 (D. Colo. Sept.

---

[11] The Court notes that the allegations based on the documents provided to plaintiff meet the particularity requirement with respect to party identification because the Amended Complaint states that defendant provided plaintiff with the documents at issue and does not mention any "representatives."  *See* ECF No. 14 at ¶ 33.

19, 2008).  Thus the Court also dismisses plaintiff's negligent misrepresentation claim for lack of particularity pursuant to Rule 9(b) under the above analysis.

In sum, the Amended Complaint fails to allege the fraud and negligent misrepresentation claims with the level of particularity required under Rule 9(b).  The Court now dismisses these claims without prejudice.[12]

## III. ORDER

For the reasons discussed above, defendant's motion to dismiss [ECF No. 18] is DENIED as to the breach of contract claim and GRANTED as to the fraud and negligent misrepresentation claims.  These latter two claims are DISMISSED without prejudice.

DATED this 12th day of November, 2014.

BY THE COURT:

_____

R. Brooke Jackson
United States District Judge

---

[12] Plaintiff argues the court should relax Rule 9(b)'s requirements because he lacks access to all the facts necessary to his claim.  ECF No. 25 at 13.  However, even in construing plaintiff's allegations in the light most favorable to him, the Court sees no reason why the plaintiff lacks access to facts about when and where he received fraudulent information and who defendant's representatives—whom plaintiff dealt with—were.  Indeed, plaintiff provides no explanation other than a conclusory statement that "Butera alleged all currently-known facts regarding defendant's fraud."  *Id.*  This is insufficient to conclude that the additional facts required under Rule 9(b) are not accessible to plaintiff.  If he develops facts in his further investigation or discovery that permit more particular allegations regarding fraud or negligent misrepresentation he may seek leave to file another amended complaint.