IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No 13-cv-03327-RBJ

T. RICHARD BUTERA, an individual,

Plaintiff,

v.

RICHARD P. CRANE, JR., an individual,

Defendant.

---

ORDER

---

This matter is before the Court on the parties' Motions for Summary Judgment, ECF Nos. 36 and 40. The motions have been fully briefed by the parties and are ripe for review. For the reasons discussed in this Order, plaintiff's motion is granted in part and denied in part. Defendant's motion is denied.

## I. FACTS

The present dispute originates from plaintiff Richard Butera's investment in a Development Trust for the City of Vernon, California, for which defendant Richard Crane served as a trustee. Amended Complaint, ECF No. 14 at ¶¶ 8–23. Butera entered into a Capital Investment Agreement ("CIA") on January 19, 2006 and invested $1 million in the trust. *Id.* at ¶¶ 34, 38, 39, 42. Crane signed the CIA as a trustee of the trust. ECF No. 30 at ¶ 36. Under the CIA, Butera was supposed to receive periodic payments and be repaid in the amount of $1.5

million on or before October 1, 2007. ECF No. 14 at ¶¶ 43, 47. The parties dispute nearly every fact subsequent to the execution of the CIA.

Butera did not receive the return of his initial investment by September 6, 2006 as promised in the CIA. ECF No. 36 at 5. He claims that Crane and other parties repeatedly represented that he would recoup his investment. ECF No. 14 at 7. Butera demanded that Crane and two other gentlemen, Frank Ross and James Ritchie, jointly and severally guaranty the $1,000,000 payment due to him. ECF No. 36 at 5, Ex. C Pl.'s Resp. Interrog. No. 3. He then instructed his Colorado attorney, Andrew Hecht, to negotiate and prepare the guaranty agreement. *Id.* at Ex. G p. 13:13–14. Hecht contacted both Crane and Ritchie. *Id.* at Ex. H. He then drafted a Guaranty of Payment agreement ("Guaranty") on August 14, 2007. *Id.* at 7. Shortly thereafter, Hecht received the executed signature pages to the Guaranty from Crane and Ritchie. *Id.* at 8, Ex. G pp. 16:5–9, 18:25, 19:1-3.

Under the terms of the Guaranty, a group of guarantors, including Crane, agreed to pay plaintiff $250,000 upon its execution and an additional $750,000 by October 7, 2008. ECF No. 36 at Ex. L. The Guaranty also provides that it "shall be governed, construed and interpreted as to enforcement and in all other respects, in accordance with the laws of the State of Colorado." *Id.* Furthermore, it states that the guarantors will reimburse Butera "for all expenses (including reasonable attorney's fees) incurred" by Butera in connection with enforcement of the Guaranty. *Id.* While Crane disputes that he is bound by the purported Guaranty, he does not dispute its content. ECF No. 30 at ¶¶49–71.

Butera received the first payment of $250,000 upon execution of the Guaranty. *Id.* at Ex. N. In anticipation of the final payment deadline of October 7, 2008, Hecht drafted and sent

Crane a demand letter. *Id.* at Ex. O. However, Butera never received the final payment of $750,000. *Id.* at 10. Butera now claims that Crane owes him $750,000 as well as interest and legal fees as specified in the Guaranty. *Id.* at 10, Ex. L. It is undisputed that Butera's claim for breach of the Guaranty accrued on October 8, 2008 when the final payment on the Guaranty was not made. ECF No. 40 at 4.

Crane insists upon a very different sequence of events. He claims that he never saw the Guaranty, and that he does not know how Butera's counsel obtained his signature. *Id.* at Ex. 9 pp. 105:6–17, 110:7–10. Crane does acknowledge that the signature on the Guaranty looks like his signature, but he claims fraud in the factum, also known as fraud in the execution. ECF No. 45 at 3. Essentially, he claims that someone fraudulently procured his signature without his knowledge of the contract's true nature or contents. *Id.* To support his argument, Crane points to plaintiff's lack of evidence, such as a fax transmittal or FedEx tracking slip, showing that Butera's attorney, Hecht, sent the Guaranty to him. ECF No. 40 at 4, Ex. 3 pp. 23:1–25:1. He also contests the accuracy of Hecht's time records for "conferences" or "negotiations" with defendant because they conflict with Hecht's phone logs. *Id.* at Ex. 3 pp. 75:6–77:13. Crane claims that he never saw the Guaranty and never would have signed it had he seen it. He denies that he owes Butera any money. ECF No. 30 at ¶96.

Butera filed this action on December 10, 2013. ECF No. 1. Crane subsequently filed a motion to dismiss plaintiff's claims. ECF No. 18. The Court dismissed plaintiff's fraud and negligent misrepresentation claims but declined to dismiss plaintiff's breach of contract claim. ECF No. 29. More recently, Butera moved for summary judgment, asking the Court to rule as a matter of law in his favor on 1) plaintiff's breach of contract claim, 2) defendant's lack of

consideration defense, and 3) the applicability of Colorado's six-year statute of limitations for breach of contract actions. ECF No. 36. Crane also moved for summary judgment, asking the Court to rule in his favor on 1) defendant's lack of consideration defense, and 2) the applicability of California's four-year statute of limitations for breach of contract actions. ECF No. 40.

## II. STANDARD OF REVIEW

The Court may grant summary judgment if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the burden to show that there is an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The nonmoving party must "designate specific facts showing that there is a genuine issue for trial." *Id.* at 324. A fact is material "if under the substantive law it is essential to the proper disposition of the claim." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. The Court will examine the factual record and make reasonable inferences therefrom in the light most favorable to the party opposing summary judgment. *Concrete Works of Colorado, Inc. v. City & Cnty. of Denver*, 36 F.3d 1513, 1517 (10th Cir. 1994).

## III. ANALYSIS

### A. Consideration

Defendant asserts as an affirmative defense to plaintiff's breach of contract claim that the Guaranty is unenforceable because it lacked consideration. ECF No. 30 at 12. Both parties move for summary judgment on this issue.

An enforceable contract must be supported by consideration. *Sumerel v. Goodyear Tire & Rubber Co.*, 232 P.3d 128, 133 (Colo. App. 2009). In the context of most written contracts, there is a presumption that the contract is supported by consideration. *Houston Fearless Corp. v. Pehlman*, 480 P.2d 113, 115 (Colo. App. 1970). That presumption may be overcome with evidence to the contrary. *Id.* However, "no such presumption arises in contracts of guarantee[.]" *Id.* For guaranties, consideration is "not presumed, but must be established by evidence[.]"[1] *Cripple Creek State Bank v. Rollestone*, 202 P. 115, 116 (Colo. 1921).

However, "while the existence of consideration is not presumed" for guaranties, "its recital in the written instrument is sufficient proof of its existence absent evidence to the contrary." *Wingerter*, 2011 WL 1135204, at *3 (citing Colo. Jury Instr., Civ. 30:7, use note ¶ 4 (4th ed. 2010)). In such a case, to survive summary judgment the nonmoving party must present evidence tending to prove a lack of consideration. *Id.* "[W]hen evidence tending to prove lack of consideration is introduced, the issue of whether there was valid consideration becomes a question of fact for the trier of fact." *Grant v. Oten*, 626 P.2d 764, 766 (Colo. App. 1981).

In the present case, evidence tending to prove both the existence and lack of consideration has been introduced. In order to demonstrate the existence of consideration, Butera points to the text of the Guaranty, which provides that it was entered into "FOR VALUE RECEIVED, and to induce [plaintiff] . . . to forbear from immediately asserting any rights he may have under [the CIA]." ECF No. 36 at 14, Ex. L. Absent any evidence to the contrary, this recital of consideration is sufficient proof of its existence. *See In re Bucci's Estate*, 488 P.2d

[1] As aptly stated in *Wingerter v. Gerber*, "[t]he passage from *Cripple Creek* concludes with the phrase 'as in case of any other contract.' The *Houston Fearless* court read the case as creating a different rule for guaranties than for other contracts." No. 09-CV-02000-PAB-MEH, 2011 WL 1135204, at *3 n.5 (D. Colo. Mar. 29, 2011) (citations omitted).

216, 218 (Colo. App. 1971). Additionally, Butera asserts that he provided consideration in the form of: (1) an extension of time for repayment of his investment under the CIA by more than two years, (2) acceptance of a lesser payment ($250,000) than the amount then due on his investment ($1,000,000) under the CIA, and (3) detrimental reliance on the fact that Crane would repay the amounts owed under the Guaranty. ECF No. 36 at 14–15, Ex. L, Ex. C Pl.'s Resp. Interrog. No. 20.

In order to demonstrate a lack of consideration, Crane first points to the text of the Guaranty. ECF No. 40 at 13. Apart from the recitation of consideration, Crane notes that the Guaranty contains no forbearance clause that would prevent Butera from suing the Development Trust for the City of Vernon for breach of the CIA. ECF No. 36 at Ex. L. Furthermore, Crane directs the Court to an ambiguity in the Guaranty. The Guaranty states, "[N]o payment made shall be considered as payment of any portion of the return under the [CIA] and [plaintiff] shall continued [sic] to be paid all return on the investment capital to which he is otherwise entitled under the [CIA]." *Id.* Crane argues that this provision expressly reserved Butera's rights under the CIA, and that nothing in the Guaranty prevented Butera from suing immediately upon execution of the Guaranty. ECF No. 40 at 13–14. If so, this provision would be in direct contravention to the recitation of consideration. Defendant also supports his argument with plaintiff's testimony. ECF No. 36 at 14. When asked what he gave Crane in exchange for Crane's guaranty, Butera stated, "What do you mean? I already gave him a million dollars. Why did I have to give him anything else?" ECF No. 42 at Ex. V p. 124:7–9. Defendant failed to note, however, that immediately thereafter Butera stated, "In other words, I agreed not to sue." *Id.* at 124:9–10.

Because there are genuine disputes as to material facts concerning the existence or lack of consideration supporting the Guaranty, the issue must be resolved by the trier of fact. Both parties' motions for summary judgment on this issue are denied.

**B. <u>Breach of Contract Claim</u>**

Butera seeks summary judgment on his claim for breach of contract. In order to recover on this claim, plaintiff must prove the following elements: (1) the existence of a contract, (2) performance by plaintiff or a justification for nonperformance, (3) failure to perform the contract by defendant, and (4) resulting damages to plaintiff. *W. Distrib. Co. v. Diodosio*, 841 P.2d 1053, 1058 (Colo. 1992).

Summary judgment is clearly inappropriate as to the first element, the existence of a contract, for two reasons. First, as discussed above, there are genuine disputes as to material facts proving the existence or lack of consideration supporting the Guaranty. Second, whether both parties knowingly signed the Guaranty is in dispute. Butera points to what appears to be Crane's signature on the last page of the Guaranty. *Id.* at 12–13, Ex. L. Crane insists that he never received the Guaranty, did not sign the document, and does not know how the attached page with his signature got on the Guaranty. *Id.* at 13. ECF No. 41, Ex. 9 pp. 105:6–17, 106:15–108:2. Genuine issues of material fact make it impossible to ascertain whether the first element of plaintiff's breach of contract claim is met. Therefore, as to his breach of contract claim, plaintiff's motion for summary judgment must be denied.

**C. <u>The Statute of Limitations</u>**

Both parties move for summary judgment regarding the applicable statute of limitations. Butera argues that Colorado's six-year statute of limitations, C.R.S. § 13-80-103.5(1)(a), should

apply to this action for two reasons: 1) his cause of action "arose" in Colorado under Colorado's borrowing statute, and 2) Colorado's conflict of law principles require the Court to apply Colorado law. ECF No. 36 at 17. Crane contends that the Court should rule as a matter of law that California's four-year statute of limitations, CCP § 337(1), applies, thus rendering plaintiff's breach of contract claim untimely. ECF No. 40 at 7–8. Crane asserts that 1) Butera's cause of action "arose" in California, requiring the Court to "borrow" California's statute of limitations, and 2) Colorado's conflict of law principles mandate the use of California law. *Id.*

**1. The Borrowing Statute.**

Colorado's borrowing statute states that "[i]f a cause of action arises in another state . . . and, by the laws thereof, an action thereon cannot be maintained in that state . . . by reason of lapse of time, the cause of action shall not be maintained in this state." Colo. Rev. Stat. §13-80-110. Thus the applicability of the borrowing statute turns on where a cause of action "arises." The Colorado Supreme Court's analysis in *Jenkins v. Panama Canal Ry. Co.* makes clear that where a cause of action arises is distinct from which state's substantive law applies, but it does not lay out a test for where a claim arises. *See* 208 P.3d 238, 243 (Colo. 2009) ("the borrowing statute only assigns limitations periods based on where a case arose, and does not consider the applicable substantive law").

As discussed in the Court's previous Order, ECF No. 29, there does not appear to be a case citing Colorado's current borrowing statute that discusses where a breach of contract claim arises. "Absent controlling precedent, [a] federal court [sitting in diversity] must attempt to predict how the state's highest court would resolve the issue." *Royal Maccabees Life Ins. Co. v.*

*Choren*, 393 F.3d 1175, 1180 (10th Cir. 2005). Given the lack of Colorado law on this issue, the Court previously identified two primary approaches that courts have taken on this issue.

In *BHP Petroleum (Americas), Inc. v. Texaco Exploration & Prod., Inc.*, the Supreme Court of Wyoming examined a list of factors in determining where a breach of contract claim arose under Wyoming's borrowing statute. 1 P.3d 1253, 1257–58 (Wyo. 2000). In determining where the plaintiff's contract claim arose, the court considered where the contract was formed (specifically, where it was negotiated and where the requisite instruments were delivered), the place of payment or performance, the location of the subject matter of the contract, and the place where the breach occurred. *Id.*

A New York opinion analyzing the applicability of New York's borrowing statute took a different approach. *See Global Fin. Corp. v. Triarc Corp.*, 93 N.Y.2d 525 (1999). The court found that "[i]n using the word 'accrued' in [the borrowing statue] there is no indication that the Legislature intended the term to mean anything other than the generally accepted construction . . . [which is] the time when, and the place where, the plaintiff first had the right to bring the cause of action." *Id.* (internal citations and quotations omitted). Looking to tort cases for guidance, the court noted that "[w]hen an alleged injury is purely economic, the place of injury usually is where the plaintiff resides and sustains the economic impact of the loss." *Id.* at 529.

In *Folda Real Estate Co. v. Jacobsen*, the Colorado Supreme Court examined a previous version of Colorado's borrowing statute to determine where a claim for nonpayment of a promissory note "arose." 223 P. 748 (Colo. 1924). In 1924 the relevant portion of the borrowing statute stated, "When a cause of action . . . arises in another state * * * and by the laws thereof an action thereon cannot there be maintained against a person by reason of the lapse of time, and

[sic] action thereon shall not be maintained against him in this state[.]"*Id.* (citing ch. 42, S. L. 1917). The *Folda* court stated,

> Where does a cause of action "arise?" Every cause of action consists of two things, a right and a violation thereof. There is no cause of action, then, on a note until the right conferred by the contract of which the note is the evidence, i. e., the right to the money at the time and place specified, has been violated by the failure to then and there pay, whereby the violator is immediately subject to an action in the courts of that jurisdiction. It would seem reasonable, then, to say that the cause of action on a note arises at the place where payment is due.

*Id.* (citing *Bruner v. Martin*, 93 P. 165 (Kan. 1907)). The note at issue in *Folda* authorized payment to the plaintiff, a Nebraska corporation, in Nebraska. *Id.* Furthermore, the suit on the note was barred by Nebraska's statute of limitations but not Colorado's. *Id.* The *Folda* court determined that the cause of action "arose" in Nebraska where the payment was due, therefore, the Court applied Nebraska's statute of limitations which barred the plaintiff's suit on the promissory note. *See id.* at 748–49.

The Court finds the *Folda* court's interpretation of "arises" as used in a previous version of Colorado's borrowing statute persuasive. *Id.* It is most similar to the modern approach taken by the *Global Financial* court in its interpretation of "accrued" as used in the New York borrowing statute. 93 N.Y.2d 525 (1999). Both approaches look to the time when, and the place where, the plaintiff first had the right to bring the cause of action. The Colorado approach specifically looks to where payment is due, while the New York approach looks to where the plaintiff sustains the economic impact of the loss. Drawing insight from both the *Folda* and *Global Financial* opinions, the Court concludes that a cause of action "arises" for a breach of contract action in the state where payment is due, which will often be the state in which the plaintiff resides.

In the present case, at issue is whether Colorado's borrowing statute requires the Court to apply California's four-year statute of limitations for breach of contract actions. The Court must determine whether plaintiff's cause of action arose in California or Colorado. It is undisputed that Butera resides in Colorado, and that the Guaranty authorizes payment to him in Colorado. ECF No. 36, Ex. L. In accordance with the Guaranty, the first payment of $250,000 was made to Butera in Colorado on or about August 14, 2007. *Id.* at Ex. N, Ex. 1 pp. 117:21–118:20. Butera never received the second payment which was due to him on October 7, 2008. *Id.* at Ex. L. I conclude that Butera's breach of contract action "arose" in Colorado on October 8, 2008 when the $750,000 payment was not made to him there. Because the claim "arose" in Colorado, the borrowing statute is not implicated.

**2. Conflict of Law Principles.**

"In making choice of law determinations, a federal court sitting in diversity must apply the choice of law provisions of the forum state in which it is sitting." *Shearson Lehman Bros. v. M & L Investments*, 10 F.3d 1510, 1514 (10th Cir. 1993). Thus the Court applies Colorado's choice of law principles. In contract actions, Colorado courts look to the Restatement (Second) Conflict of Laws (1971). *See Farris v. ITT Cannon, a Div. of ITT Corp.*, 834 F. Supp. 1260, 1266 (D. Colo. 1993). As relevant here, Restatement (Second) of Conflict of Laws § 187 provides:

> The law of the state chosen by the parties to govern their contractual rights and duties will be applied . . . unless . . . application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties.

The Guaranty states, "This Guaranty shall be governed, construed and interpreted as to validity, enforcement and in all other respects, in accordance with the laws of the State of Colorado." ECF No. 36 at Ex. L. Notwithstanding defendant's argument regarding fraud in the execution, on its face the Guaranty is a contract with a Colorado choice of law provision. *Id.* If the trier of fact finds that no contract exists between the parties, the choice of law issue is moot. If the trier of fact finds that the Guaranty is indeed a contract between the parties, the Colorado choice of law provision is effective.

Crane argues that, nevertheless, California law should be applied here. ECF No. 40 at 8. To reach this conclusion, the Court would need to find that (1) California has a materially greater interest in the present issue, (2) California law would apply in the absence of the choice by the parties, and (3) the application of Colorado law here would be contrary to a fundamental policy of California. Restatement (Second) of Conflict of Laws § 187.

Defendant asserts that application of Colorado's six-year statute of limitations in breach of contract actions, C.R.S. § 13-80-103.5(1)(a), is in fundamental conflict with California's four-year statute of limitations, CCP § 337(1).[2] This argument is unpersuasive. The *Berglass* court stated, "California allows contracting parties to both shorten and

---

[2] Defendant also argues that the Guarantee's unilateral attorney's fee provision is in fundamental conflict with California Civil Code § 1717. ECF No. 40 at 10. California has a fundamental policy concerning the reciprocity of attorney's fee provisions in contracts. *ABF Capital Corp. v. Grove Properties Co.*, 23 Cal. Rptr. 3d 803, 810 (Cal. Ct. App. 2005). In contrast, a fee-shifting provision need not be mutual in Colorado. *Morris v. Belfor USA Grp., Inc.*, 201 P.3d 1253, 1260 (Colo. App. 2008). The two policies are in conflict. Restatement (Second) of Conflict of Laws § 187 also requires the Court to determine whether California has "a materially greater interest than the chosen state *in the determination of the particular issue*." (emphasis added). Colorado has a significant interest in abiding by the parties' contractual intentions and fulfilling their reasonable expectations. I am not persuaded that California has a materially greater interest than Colorado in the determination of attorney's fees. Therefore, the Court need not decide whether California law would apply in the absence of the Colorado choice of law provision.

extend limitation periods and has no discernible fundamental policy against the application of other jurisdictions' limitation periods." *ABF Capital Corp. v. Berglass*, 30 Cal. Rptr. 3d 588, 594 (Cal. Ct. App. 2005). The Court finds that California has no fundamental policy with which application of Colorado law would conflict, and therefore declines to analyze the other two prongs of the test.

For the reasons outlined above, the Court grants plaintiff's motion for summary judgment as to the applicable statute of limitations. Defendant's motion for summary judgment is denied as to this issue.

## IV. ORDER

Therefore plaintiff's motion for summary judgment, ECF No. 36, is GRANTED IN PART and DENIED IN PART. Plaintiff's motion is granted with respect to the application of Colorado's statute of limitations and is otherwise denied. Defendant's motion for summary judgment, ECF No. 40, is DENIED.

DATED this 22nd day of September, 2015.

BY THE COURT:

R. Brooke Jackson
United States District Judge